Virginia Lee GREENWOOD, Plaintiff
in Error,

v.

LYLES & BUCKNER, INC., and Vernon L.
Pool and Jessie T. Pool, individually and
as co-partners doing business as Pool Con-
struction Co., Defendants in Error.

No. 37938.

Supreme Court of Oklahoma.

Sept. 16, 1958.

Jefferson G. Greer, Tulsa, Donald L. Musser, Pittsburg, Kan., for plaintiff in error.

T. L. Gibson, Muskogee, for defendants in error, Lyles & Buckner, Inc.

Looney, Watts, Looney & Nichols, Anna B. Otter, Oklahoma City, for defendants in error, Vernon L. Pool and Jessie T. Pool, individually, and as co-partners d/b/a Pool Const. Co.

JACKSON, Justice.

The trial court sustained defendants' demurrers to plaintiff's petition and upon plaintiff's election to stand on her petition, the court ordered the petition dismissed. Plaintiff appeals.

Plaintiff, Virginia Lee Greenwood, alleged that she sustained permanent injuries when an automobile in which she was riding ran into a drainage ditch at the terminus of a State Highway. Other pertinent allegations in the petition set forth the following facts: The defendants, Lyles & Buckner, Inc., and Pool Construction Company, contracted with the State of Oklahoma to perform certain construction work on new State Highway 62, and old State Highway 62. Both highways run in a westerly direction from the City of Henryetta. Old Highway 62 terminates at a point two miles west of Henryetta, and approximately 50 feet north of new Highway 62. Defendants contracted to erect a dirt road running from old Highway 62 south to new Highway 62. Old Highway 62 has an asphaltic concrete surface and continues past the dirt surfaced road a distance of 70 to 80 feet, and there terminates. Defendants covered this portion of the road with a light layer of sand and gravel.

A short distance west of the termination point defendants constructed and left open a drainage ditch running at right angles to the old highway. Defendants failed to erect any warning signs or barriers at or near the termination point of the old highway.

Defendants' work was accepted by the State of Oklahoma and the Department of Highways prior to the accident in which plaintiff was injured.

On the night of December 23, 1955, Eugene Novotny, the driver of the car in which the plaintiff was riding, was driving west on old Highway 62, exercising due care for the safety of himself and plaintiff. The specific allegations with reference to the accident are as follows:

"As the said Eugene Novotny approached the termination point of old Highway 62 he suddenly saw that old Highway 62 terminated and that beyond this in his line of travel there was a deep open ditch. That he there-

upon applied his brakes in an effort to avoid a collision with this ditch. That his automobile slid on the sand and gravel negligently placed and allowed to remain atop this asphaltic concrete surface by the defendants, and was thereby catapulted, slid and hurled into the aforementioned ditch ahead, throwing the plaintiff against the dashboard and inflicting serious, painful and permanent injuries on plaintiff."

It is further alleged that the work performed by defendants, together with the failure to erect either barriers or warning signs, created an imminently dangerous condition which defendants knew would result in harm to persons using the public highway.

Does the petition contain facts sufficient to state a cause of action?

In Armstrong v. City of Tulsa, 102 Okl. 49, 226 P. 560, 562, we said:

"* * * subject to some qualifications, which are not present here, the general rule is that, after the contractor has turned the work over, and it has been accepted by the proprietor, the contractor incurs no further liability to third persons by reason of the condition of the work, * * *."

Plaintiff contends that the facts of the instant case place it within an exception to the general rule. In order to determine whether the facts in this case justify a departure from the general rule, it is necessary to consider the underlying reasons for the general rule.

The announced reasons are many and varied. In some of the earlier cases non-liability is said to follow from the fact that there is no privity of contract between the contractor and the injured third person, and, therefore, no duty owing. This theory has met with increasing disfavor. It is now generally conceded as an academic proposition that a duty in tort does exist in cases of this nature.

In 13 A.L.R.2d at page 191, appears an extensive annotation on the subject. At page 206, the author states:

"A more prominent reason for the rule is said to be that a wise and conservative public policy confines the contractor's or manufacturer's liability for negligence in the construction of complicated structures or machinery to the persons to whom he is liable under his contract."

We are likewise of the opinion that the general rule of non-liability is based upon considerations of public policy rather than general principles of tort law. In some of the cases denying liability, after acceptance by the contractee, it is observed that if the rule were otherwise there would be no end to the resulting litigation; and that the subsequent burden thereby placed upon construction contractors would effectively force them out of business.

Since the general rule is based upon public policy considerations, and to some extent designed to protect the contractor, it followed logically in the development of the law that certain exceptions would be engrafted upon the general rule to cover those situations wherein the interests of the public outweighed those of the contractor, particularly where the contractor had been guilty of wilful negligence. Thus it has been held in numerous cases that the contractor's liability extended beyond acceptance by the contractee where the contractor *knew* that the defective condition of the structure was such as to make it immediately and certainly dangerous to persons other than the contractee who would necessarily be exposed to such danger. The contractor's negligence in such case has been characterized as "wilful negligence".

In Murphy v. Barlow Realty Co., 206 Minn. 527, 289 N.W. 563, 566, the court said:

"Public policy is essentially a balancing of interests. If a contractor is to be protected from liability in the situation here, that is, 'insulated' because he has completed the building and turned it over to the very ones who participated in the wrongful conduct, some sound reason must be found. At the outset,

one who, as here, wilfully constructs such a latent trap has not much to recommend himself to leniency. In fact, a survey indicates there is a general tendency throughout the law to impose upon a manufacturer or builder liability for defective construction, especially where it is the product of wilful negligence. * * *."

Though the quoted langauge refers to a latent trap, it was latent only to the public. The owner knew of the defect.

The allegations of the petition in the case at bar sufficiently show that the defendants knowingly created an immediately dangerous condition which they knew could result in harm to the traveling public. However, this conclusion does not resolve the controversy.

In some of the cases wherein the exception relating to imminently dangerous structures is discussed, the courts have stated that the contractor is not liable in any event unless the dangerous condition is concealed from the contractee. In our view concealment from the contractee, or lack of concealment, relates only to the question of proximate cause insofar as negligence on the part of contractees might be an intervening cause, and should not be considered in conjunction with the public policy considerations governing the general rule of non-liability and the exception thereto.

If the dangerous condition is obvious to the contractee, and after acceptance he *maintains* the structure in its dangerous condition, and permits the public to use it, this constitutes negligence and operates as the intervention of an independent, efficient cause and will, under certain conditions, destroy the causal connection of the contractor's original negligence. In the instant case the very nature of the dangerous condition was such as to compel the conclusion that it could have been discovered by a casual inspection by the contractee. Therefore, the action of the contractee in maintaining the road in its dangerous condition after acceptance constituted an intervening efficient cause.

In this connection, however, it must be noted that even though a new and efficient cause did intervene the chain of causation was not broken if the contractors could reasonably have anticipated that the contractee would not repair the defects.

This principle is announced in City of Altus v. Wise, 193 Okl. 288, 143 P.2d 128, 129, wherein it is held in the third paragraph of the syllabus:

"The causal connection between an act of negligence and an injury is not broken by the intervention of a new, independent, and efficient cause, where the wrongdoer could reasonably have anticipated that such intervening cause, or a similar one, would intervene *in a way* likely to cause an injury similar to that actually suffered." (Emphasis supplied.)

See, also, the third paragraph of the syllabus in Oklahoma Natural Gas Co. v. Courtney, 182 Okl. 582, 79 P.2d 235, and the body of the opinion wherein the court acknowledges the applicability of such rule even where the intervening cause is an independent, negligent act of a second tort feasor.

Could defendants have reasonably anticipated that the State Highway Department would permit the public to use this road in its dangerous condition without erecting some form of warning signals or barriers? If the contractors knew that the road was at the time or to be immediately thereafter open for travel, they would necessarily know that injury might occur before the Highway Department would have time to remedy the dangerous condition. In any event, the foreseeability of such a contingency would be a question for the jury if the time elapsing between acceptance and the injury bore some reasonable relation to the time which all reasonable men would expect to be the maximum time in which such defect would or could be remedied. But in the case at bar a period of seven months elapsed between the time of the acceptance and the date of the injury. This is admitted in the plaintiff's brief.

Plaintiff did not allege in her petition how much time had elapsed, but in our view this does not enhance her position. Presumptively, it could not be foreseen that the Highway Department would neglect its duty to the extent of permitting public travel on this road in its *obviously* dangerous condition, beyond whatever time it would take to remedy such condition. Therefore, if the time between acceptance and the injury was so short as to suggest that it had not had ample time to correct the condition, or if facts existed which should have caused the contractors to believe that the Highway Department would not perform its duty, such matters should have been affirmatively pleaded. In referring to the seven months period, we are considering the facts from the standpoint most favorable to plaintiff. Furthermore, in Ramer v. State of Oklahoma ex rel. Ward, Okl., 302 P.2d 139, we permitted an admission in the brief to be used to supplement the record so as to cure the trial court's error in sustaining a motion for judgment on the pleadings.

Plaintiffs cite and rely on Murphy v. Barlow Realty Co., supra. In that case the contractee knew of the dangerous condition and the court, nevertheless, held that the plaintiff might recover from the contractor. However, in that case the owners contracted in the first instance that the building be erected in the particular defective manner; therefore, the contractor could clearly foresee that the owners would not remedy the dangerous condition which they intentionally caused to be created. Furthermore, in commenting upon the lapse of time and its effect upon causal connection, the court in that case said:

"* * * And, of course, the length of time between completion and the injury is a factor to be considered in determining whether the contractor's default was a cause at all in the ultimate result. * * *."

We do not think reasonable men would differ on this question. We hold that under the facts alleged in plaintiff's petition it could not have been reasonably anticipated that the State Highway Department would permit public travel over this road for a period of seven months without ever taking precautions to guard against accidents such as that involved in this case.

Affirmed.