2002 SD 67

Larry BRAUN, Plaintiff and Appellant,

v.

NEW HOPE TOWNSHIP, a political subdivision of the County of Brown, State of South Dakota, Defendant and Appellee,

and

T–Lakota Acres, Inc., a corporation, Defendant and Appellee,

v.

Scott Rozell, Third–Party Defendant and Appellee.

Larry Braun, Plaintiff and Appellee,

v.

New Hope Township, a political subdivision of the County of Brown, State of South Dakota, Defendant and Appellant,

and

T–Lakota Acres, Inc., a corporation, Defendant and Appellee,

v.

Scott Rozell, Third–Party Defendant and Appellee.

Nos. 22097, 22137.

Supreme Court of South Dakota.

Considered on Briefs April 22, 2002.

Decided June 5, 2002.

Thomas P. Tonner of Tonner, Tobin and King, Aberdeen, for plaintiff Braun.

Greg L. Peterson of Bantz, Gosch, Cremer, Peterson & Sommers, Aberdeen, for defendant New Hope Township.

Chester A. Groseclose of Richardson, Groseclose, Wyly, Wise & Sauck, Aberdeen, for defendant T–Lakota Acres.

Richard L. Russman of Rice, Ewinger & Russman, Aberdeen, for defendant Rozell.

ZINTER, Justice.

[¶ 1.] Plaintiff Larry Braun (Braun) and defendant New Hope Township (Township) appeal from the trial court's order granting summary judgment in favor of defendants T–Lakota Acres, Inc. (T–Lakota) and Scott Rozell (Rozell). T–Lakota and Rozell were allegedly negligent in either removing or failing to properly reinstall a township-road sign that warned of a washout. Township reinstalled the warning sign after T–Lakota's and Rozell's alleged negligence. After entry of summary judgment, Township remained the sole defendant. We affirm.

## FACTS AND PROCEDURE

[¶ 2.] The winter of 1996–97 produced heavy snowfall in the Township. The following spring, seven Township roads were washed out by runoff from the melting snow. To protect the public, Township installed a "ROAD CLOSED" sign about three-quarters of a mile from one of the washouts. The sign was mounted on a post in the center of the road.

[¶ 3.] On May 23, 1997, Ron Backman (Backman), an employee of T–Lakota, drove T–Lakota's tractor to Rozell's farm to deliver a 24–foot–wide farm implement. Backman also intended to help Rozell plant soybeans on the Rozell farm. As Backman proceeded toward the farm, he observed the "ROAD CLOSED" sign in the middle of the road. In order to get to Rozell's farm with the implement, Backman had to remove the sign from the middle of the road. When Backman pulled the sign out of the road, a portion of the post broke, and he placed the sign on the side of the road.

[¶ 4.] When the planting was completed at Rozell's farm, Backman and Rozell met to try and put the sign back up. They were not successful. They were only able to prop the sign up against a pile of rocks in the middle of the road. Before leaving, Rozell told Backman that Rozell would return later and put the sign up with a post maul.

[¶ 5.] Rozell, however, forgot to fix the sign. When he did return a few days later, Rozell found that the sign was already reinstalled by someone else. It was later discovered that Township learned the sign was down, and two members of the Township Board reinstalled it. They did not, however, reinstall the sign in the middle of the road. Instead, they reinstalled it on the right side of the road. Because the fence post was broken, the sign was also somewhat shorter than it was before Backman removed it.

[¶ 6.] On June 13, 1997, about three weeks after the sign was reinstalled by Township, Braun was driving his Suburban on the road in order to examine his sunflower field. As he drove past his field, Braun descended down a hill toward the creek that had washed out. Braun claims that he did not see the sign on the right side of the road. He also claims that he did not see the washout in time to avoid it. Braun was unable to stop before driving into the wash-out. He was severely injured as a result of the accident.

[¶ 7.] Braun sued Township and T–Lakota for the injuries he sustained. Both defendants denied responsibility and asserted affirmative defenses. After depositions were taken, T–Lakota moved for summary judgment. The motion was initially denied. After further depositions were taken, Rozell was joined as a third-party defendant. T–Lakota subsequently renewed its motion for summary judgment. Rozell joined in the motion. The trial court ultimately granted the motion. The trial court concluded that Township's alleged negligence was a superseding cause that relieved Rozell and T–Lakota (Backman) of liability for their alleged negligence. Braun appeals.

## STANDARD OF REVIEW

[¶ 8.] In reviewing a grant or a denial of summary judgment under SDCL 15–6–56(c), we must determine whether the moving party demonstrated the absence of any genuine issue of material fact and [established] entitlement to judgment on the merits as a matter of law. The evidence must be viewed most favorably to the nonmoving party[,] and reasonable doubts should be resolved against the moving party.... Our task on appeal is to determine only whether a genuine issue of material fact exists and whether the law was correctly applied. *South Dakota State Cement Plant Com'n v. Wausau Underwriters Ins. Co.*, 2000 SD 116, ¶ 9, 616 N.W.2d 397, 400–01.

[¶ 9.] In this case the dispositive issue questions whether a third party's

negligence was a superseding cause of the accident. As is explained later, this is a legal question of duty.[1] *See infra* ¶ 11. "For the law to impose a duty, a sufficient relationship must exist between the parties." *Gilbert v. United Nat. Bank*, 436 N.W.2d 23, 27 (S.D.1989) (internal citations omitted). Foreseeability may also create a duty. *Smith v. Lagow Const. & Developing Co.*, 2002 SD 37, ¶ 17, 642 N.W.2d 187. "Although foreseeability is a question of fact in some contexts, foreseeability in defining the boundaries of a duty is always a question of law." *Id.* at ¶ 18, 642 N.W.2d 187 (additional citations omitted). "Foreseeability in the 'duty' sense is different from foreseeability in fact issues bearing on negligence (breach of duty) and causation." *Id.* Because this case questions the existence of a duty (created by relationship or through foreseeability), the issue is a question of law that is fully reviewable by this Court. *Gilbert*, 436 N.W.2d at 27; *Lagow*, 2002 SD 37 at ¶ 18, 642 N.W.2d at 192.

### ANALYSIS AND DECISION

[¶ 10.] We have previously recognized the common law rule that intervening/superseding causes may relieve a negligent actor from that actor's antecedent negligence. "When the natural and continuous sequence of causal connection between the negligent conduct and the injury is *interrupted by a new and independent cause*, which itself produces the injury, that *intervening* cause operates to relieve the original wrongdoer of liability." *Schmeling v. Jorgensen*, 77 S.D. 8, 18, 84 N.W.2d 558, 564 (1957) (emphasis added)

(internal citations omitted). However, "[t]he intervening cause must be a *superseding* cause. It must so entirely supersede the operation of the defendant's negligence that it alone, without his negligence contributing thereto, produces the injury." *Id.* (emphasis added).

[¶ 11.] Although we have acknowledged this rule in a number of cases,[2] we have not specifically considered whether it is an issue of duty or causation. We also have not considered the circumstances under which the rule should be applied.

[¶ 12.] The intervening/superseding cause analysis questions the extent of the obligation, or duty, of the original actor who was negligent. W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 44 at 301 (5th ed.1984). Although the question is often expressed in terms of "cause" or "proximate cause," those terms avoid the real issue. The appropriate question "is one of negligence and the extent of the obligation: whether the [original actor's] responsibility extends to such interventions, which are foreign to the risk the [original actor] has created. It is best stated as a problem of the scope of the legal obligation to protect the plaintiff against such an intervening cause." *Id.* at 313.

[¶ 13.] Although Township's alleged negligence was an intervening cause, not all-intervening causes relieve the original actor of liability. As we stated in *Schmeling*, the intervening cause must also be a superseding cause. *Schmeling*, 77 S.D. at 19, 84 N.W.2d at 564. Although courts have not always distinguished intervening and superseding forces or causes, the Restatement (Second) of Torts delineates the two. "An intervening force is

1. Any dispute about the facts of the accident may be material to Braun's alleged contributory negligence, but that dispute is not material to the issue of duty.

2. *See State v. Lamont*, 2001 SD 92, 631 N.W.2d 603; *State v. Two Bulls*, 1996 SD 53, 547 N.W.2d 764; *Fenner v. Trimac Transp.,*

*Inc.,* 1996 SD 121, 554 N.W.2d 485; *Small v. McKennan Hosp.,* 437 N.W.2d 194 (S.D. 1989); *Johnson v. Straight's, Inc.,* 288 N.W.2d 325 (S.D.1980); *Grant v. Matson,* 68 S.D. 402, 3 N.W.2d 118 (1942); *Fletcher v. South Dakota Cent. Ry. Co. et al.,* 36 S.D. 401, 155 N.W. 3 (1915).

one which actively operates in producing harm to another after the actor's negligent act or omission has been committed." Restatement (Second) of Torts § 441(1) (1984). If the act or operation of an intervening force prevents the original actor's antecedent negligence from becoming a legal cause in bringing about the harm to another, it then becomes a superseding cause. *Id.* at § 441(2).

■ [¶ 14.] The determination of when an intervening cause becomes a superseding cause is based on a number of factors. Restatement at §§ 441(2), 442–53. Two common factors are the relationship of the parties and foreseeability. *Lagow*, 2002 SD 37 at ¶¶ 12, 16, 17, 642 N.W.2d at 192 (duty may arise from a relationship or from a foreseeable risk of harm).

■ [¶ 15.] More specific rules for determining whether a third party's actions become a superseding cause are set forth in § 452 of the Restatement. Generally, "the failure of a third person to act to prevent harm to another threatened by the actor's negligent conduct is not a superseding cause of such harm." Restatement at § 452(1). There is, however, an exception that is the issue in this case. "Where *because of lapse of time or otherwise,* the duty to prevent harm to another threatened by the actor's negligent conduct is found to have shifted from the actor to a third person, the failure of the third person to prevent such harm is a superseding cause." *Id.* at § 452(2) (emphasis added). In such cases the duty, and therefore the entire responsibility, shifts to the third person and the original actor is relieved of liability. *Id.* at § 452(2) com. d.

■ [¶ 16.] In order to determine whether an actor's liability is shifted to a third person, one must look to see if the intervening cause was foreseeable. Prosser & Keeton, *supra,* § 44 at 302. The risk created by the original actor may include the intervention of the foreseeable negligence of others. *Id.* If such intervening negligence was foreseeable, the original actor remains liable because "[f]oreseeable intervening forces are within the scope of the original risk . . . ." *Id.* § 44 at 303. As we noted in *Lagow*, "[f]oreseeability of high risk of harm is the basis for delineating the boundaries for a duty of protection." *Lagow*, 2002 SD 37 at ¶ 17, 642 N.W.2d at 192 (additional citations omitted). *See also McKennan Hosp.*, 437 N.W.2d at 202 (stating that "[t]he act of a third party does not excuse the first wrongdoer if such act was, or should have been foreseen"). Therefore, we must decide whether it was reasonably foreseeable to T–Lakota and Rozell that Township, after having affirmatively acted to reinstall the sign, would do so in a negligent manner.

[¶ 17.] In deciding that question, it is significant that Township had an independent statutory duty to erect and maintain adequate barriers and signs to protect the public from damaged township roads. SDCL 31–32–10 provides that a township is responsible for the maintenance of its highways if they are damaged by a flood. The statute specifically requires townships to "erect guards over such defect or across such highway of sufficient height, width, and strength to guard the public from accident or injury . . . ." *Id.* Additionally, SDCL 31–28–6 requires townships to erect "substantial and conspicuous warning sign[s]" on the right-hand side of the highway for "point[s] of danger." These statutes create a duty of care. *See Lagow*, 2002 SD 37 at ¶ 38, 642 N.W.2d at —— (Gilbertson, C.J., dissenting) (a legal obligation can be created by enactment of a statute).

[¶ 18.] It is also significant that this accident happened after Township affirmatively acted under these statutes to remedy the danger. Because Township reinstalled the sign before the accident, T–Lakota's and Rozell's acts or omissions were no longer creating the condition or

danger which ultimately harmed Braun. In light of these statutes, the affirmative acts of Township, and the passage of time, was it reasonably foreseeable that Township would reinstall the sign in a manner that was allegedly inadequate to guard the highway? We think not.

[¶ 19.] Prosser has expressly recognized the superseding responsibility of third parties like Township, who become aware of a danger and deal with it before the original actor's negligence has caused harm. Prosser notes that in those situations, an original actor is sometimes "free to assume that when a third party becomes aware of the danger, and is in a position to deal with it, the third person will act reasonably. It is only where misconduct was to be anticipated, and taking the risk of it was unreasonable, that liability will be imposed for consequences to which such intervening acts contributed." Prosser & Keeton, *supra*, § 44 at 313. If a third person "fully discovers the danger, and then proceeds, in deliberate disregard of it ... to inflict upon the plaintiff the danger which the third person has discovered" the responsibility is shifted to the third party. *Id.* § 44 at 318–19. Under these circumstances, T–Lakota and Rozell could not have foreseen that Township, having reinstalled the sign, would have done so in a manner which allegedly did not meet Township's duty.

[¶ 20.] Similar situations were considered in Oklahoma and Minnesota. In *Greenwood v. Lyles and Buckner, Inc.*, 329 P.2d 1063 (Okla.1958), a construction company constructed an open drainage ditch on a highway for the State of Oklahoma. In performing the work, the *company* failed to erect any warning signs or barriers. The State, however, accepted the company's work. Seven months later, a plaintiff was injured when she drove into the ditch.

[¶ 21.] The Oklahoma Supreme Court held that the State's action, in maintaining the road in a dangerous condition after it accepted the company's work, constituted an intervening [superseding] cause. *Id.* at 1066. The court phrased the question, "[c]ould the [construction company] have reasonably anticipated that the State Highway Department would permit the public to use this road in its dangerous condition without erecting some form of warning signals or barriers?" *Id.* The court answered that it was not foreseeable that the State would neglect its duty to the extent of allowing the public to travel on the road in its dangerous condition beyond whatever time it would take to remedy such condition. *Id.* at 1067. The court concluded, "[w]e do not think reasonable [minds] would differ on this question. We hold that ... it could not have been reasonably anticipated that the State Highway Department would permit public travel over this road for a period of seven months without ever taking precautions to guard against accidents ...." *Id.*

[¶ 22.] In *Goar v. Village of Stephen*, 157 Minn. 228, 196 N.W. 171 (1923), the Minnesota Electric Distributing Company contracted with Village of Stephen (Village) to construct an electric transformer pole. When the project was completed, the company turned it over to the Village. The contract between those parties, like the statutes in this case, expressly imposed responsibility upon the governmental entity for inspection, care, and maintenance. Village, however, did nothing to inspect or maintain the pole. Over seventeen months later, it was discovered that through the negligence of the company, two wires on the pole were set too close together. As a result, high winds caused the wires to rub together, and the insulation began to wear. When the insulation on the wires had finally worn through, an electrical current of 2300 volts transmitted over a telephone wire to a plaintiff who was using a phone.

[¶ 23.] The Minnesota Supreme Court held that the company was not liable for its negligence. *Id.* at 236. The court stated, "[i]f the [c]ompany is liable in this case, there is no rule of law which would prevent the same result were the accident to occur ten years later." *Id.* The court elaborated, "... the negligence of the Village was an independent producing agency of such character, that it broke the causal connection between the negligence of the company and plaintiff's injury...." *Id.* at 237. The court held that where there has been an extended lapse of time, and a failure to perform an affirmative duty on the part of the Village, but for which the accident would not have occurred, the Village's failure to perform becomes the proximate cause.[3] *Id.* at 241.

■■■ [¶ 24.] In this case, no injury occurred between the time of T–Lakota's and Rozell's alleged negligence and the time Township reinstalled the sign. When Rozell returned[4] to fix the sign, he found that Township had already undertaken its statutory duties and had reinstalled it. At this point, neither Rozell nor T–Lakota had any reason to foresee that Township had performed their duty in an allegedly negligent manner. Approximately three weeks after Township completed its statutory duty to reinstall the sign, Braun drove

his Suburban into the washout. If Rozell or T–Lakota were liable in such a case, nothing would prevent them from being liable if the accident were to occur ten years later. We hold that the lapse of time, the independent statutory duty of Township to erect guards and maintain an appropriate sign, and the affirmative performance of that duty in an allegedly negligent manner were superseding causes that relieved T–Lakota and Rozell of liability for their alleged negligence. Under these circumstances, liability for the breach of duty to Braun shifted to the Township. Summary judgment was properly granted.

[¶ 25.] Affirmed.

[¶ 26.] GILBERTSON, Chief Justice, and AMUNDSON, and KONENKAMP, Justices, concur.

[¶ 27.] SABERS, Justice, dissents.

SABERS, Justice (dissenting).

[¶ 28.] I dissent. The majority opinion holds that the conduct of Township in improperly reinstalling the warning sign was an intervening superseding cause precluding a finding of negligence and relieving Rozell and T–Lakota from any liability. In reaching this result, the majority opinion incorrectly relies on Restatement (Second) of Torts § 452(2).

---

3. Although the Minnesota Supreme Court phrased the issue in terms of causation, "duty" and "causation" are often used interchangeably. In any event, the result is the same whether the issue is phrased in terms of "duty" or "causation."

4. T–Lakota argues that Rozell's assurance to Backman that Rozell would reinstall the sign was also a superseding cause. Responsibility may be shifted by an agreement between the original actor and a third person. Restatement at § 452(2) cmt. e. The Restatement's illustration is apposite:

A is one of a crew of workmen employed by a construction company to excavate a trench in the public highway. One of A's duties, at the close of a day's work, is to

set out barriers and warning flares for the protection of travelers on the highway. A forgets to do so before going home at the end of the day. When halfway home he remembers, and returns to the scene, intending to make good his neglect. There he meets B, the foreman of the company, who tells him to go on home, promising that he, B, will look after the barriers and flares. A goes home. B in turn forgets, and the trench is left without guard, lights, or warning. During the night C, a traveler on the highway, drives into the trench and is injured. A is not liable to C.

*Id.* § 452(2) illus. 5. We agree that, as between T–Lakota and Rozell, the responsibility shifted to Rozell.

[¶ 29.] Section 452(2) is an exception to the general rule of § 452(1) that "the failure of a third person to act to prevent harm to another threatened by the actor's negligent conduct *is not a superseding cause* of such harm." (emphasis added). The exception provides: "Where, because of a lapse of time or otherwise, the duty to prevent harm to another threatened by the actor's negligent conduct is found to have shifted from the actor to a third person, the failure to the third person to prevent such harm is a superseding cause." The lapse of time may shift the duty and liability for any injury to the third person and may relieve the original actor of any liability. § 452(2) cmt. d. However, the general rule of § 452(1) should apply under these circumstances, not the exception.

[¶ 30.] The lapse of time between Rozell and T–Lakota's conduct and Township's conduct is not so significant as to relieve Rozell and T–Lakota of all liability as a matter of law. The majority opinion's statement that: "If Rozell or T–Lakota were liable in such a case, nothing would prevent them from being liable if the accident were to occur ten years later[ ]" goes too far. The three-week lapse in time between the reinstallation of the sign and Braun's accident is not so long as to necessarily render any future injuries unforeseeable. Additionally, the independent statutory duty of Township to maintain appropriate signs cannot completely relieve Rozell and T–Lakota of all liability for their negligent conduct. The intervening act of Township, reinstalling the sign, does not "so entirely supersede the operation of [Rozell and T–Lakota's] negligence that it alone, without [their] negligence contributing thereto, produces the injury." *Schmeling v. Jorgenson,* 77 S.D. 8, 18, 84 N.W.2d 558, 563 (1957) (citation omitted). The conduct of Rozell, T–Lakota and Township operated concurrently to produce the harm suffered by Braun.

[¶ 31.] Furthermore, this Court has stated: "[N]egligence, to render a person liable, need not by the sole cause of injury, but it is sufficient that his negligence concurring with one or more efficient negligent acts of third persons, is a proximate cause of the injury." *Schmeling,* 77 S.D. 8 at 19, 84 N.W.2d at 564 (additional citations omitted). As a matter of law, Rozell and T–Lakota are not entitled to summary judgment. It is a question for the jury to determine whether the lapse of time is sufficient to relieve others of liability and I would reverse so that a jury could determine the liability of Rozell and T–Lakota.