2007 OK 79

Dianna CRAFT, Plaintiff/Appellant,

and

Compsource of Oklahoma, Intervenor,

v.

GRAEBEL–OKLAHOMA MOVERS, INC., and Central City Mobile Services, Inc., Defendants/Appellees.

No. 102,352.

Supreme Court of Oklahoma.

Oct. 16, 2007.

William R. McMahon, Tulsa, OK, and Terrel B. DoRemus, Tulsa, OK, for Plaintiff/Appellant.

Tracy Pierce Nester, McGivern, Gilliard, & Curthoys, for Defendant/ Appellee Graebel–Oklahoma Movers, Inc.

Truman B. Rucker, Wilson, Cain & Acquaviva, Tulsa, OK, for Defendant/Appellee Central City Mobile Services, Inc.

COLBERT, J.

¶ 1 Plaintiff Dianna Craft has appealed from the district court's order granting summary judgment to Defendants Graebel–Oklahoma Movers, Inc., and Central City Mobile Services, Inc., in her lawsuit for damages arising from personal injuries.[1] Plaintiff was injured in a motor vehicle accident that occurred in the course of her employment with Graebel's subcontractor, Propack, Inc. Graebel was Plaintiff's principal employer and Central City inspected and repaired the van in which she was riding. Plaintiff asserted that her injuries were exacerbated because both Graebel and Central City violated federal safety standards applicable to the van. We conclude that the district court erred in granting summary judgment.

## I. BACKGROUND AND PROCEDURAL HISTORY

¶ 2 Graebel operates a moving and storage business. Propack leased equipment and employees to Graebel to provide packing services necessary to the fulfillment of Graebel's moving contracts. On March 28, 1998, Plaintiff and other Propack employees were returning from a packing job for Graebel. The van in which they were riding was struck in the right rear bumper by another vehicle, whose driver is not a party here. Plaintiff was injured, filed for workers' compensation benefits, and was adjudicated permanently and totally disabled by the workers' compensation court.

¶ 3 Plaintiff then filed this claim against Graebel and Central City in district court. She contended that both Graebel and Central City are liable for her injuries under common law and federal law. Plaintiff claimed her injuries were exacerbated by the lack of a working seat belt, a violation of federal safety standards applying to motor carriers like Graebel and inspectors like Central City.

¶ 4 Both Graebel and Central City filed motions for summary judgment. Graebel asserted that, as Plaintiff's "principal employer," it was protected by the exclusive remedy provision found in section 12 of Oklahoma's Workers' Compensation Act. Okla. Stat. tit. 85, §§ 1–211 (2001 & Supp.2006).[2] Plaintiff agreed that Graebel was her principal employer, but contended that federal law preempts the exclusive remedy provision. In its motion for summary judgment, Central City asserted that it had only a duty to warn and that it had no duty to Plaintiff because she knew the seat belt was broken. Plaintiff countered that Central City had a greater duty under federal law to report the condition of the vans, including the lack of appropriate safety equipment.

¶ 5 In response to both motions for summary judgment, Plaintiff presented evidentiary materials in support of the following

---

1. Compsource of Oklahoma intervened to safeguard its right of subrogation in any recovery Plaintiff might receive, but has taken no active part in the proceedings and has made no appearance in this appeal.

2. Plaintiff's injury occurred in 1998. The Workers' Compensation Act has been amended since that time, but those changes have no effect on our analysis here. Therefore, we have cited the most recent versions of those statutes in this opinion.

allegations: Propack vans were poorly maintained, regularly broke down, and failed to provide the most rudimentary safety equipment, including a sufficient number of seats for the employees assigned to the job. Employees routinely rode to job sites seated on boxes or on the engine mount between the front seats. Even if an employee had a proper seat, many of the seatbelts did not work. Graebel had the authority to insist that Propack's vans were in proper working order by virtue of the leasing contract and responsible Graebel personnel were directly and repeatedly informed of the condition of the vans.

¶ 6 Plaintiff also introduced evidence that Propack and Graebel had little financial incentive to keep the vans in proper working order. Vans were used only to transport employees and packing materials to job sites. Packing employees were paid for each box they packed, not by the hour. If a van broke down, stranding the employees until repairs could be made, Propack suffered no financial loss for the additional time its employees were out on the job (although Propack once paid for lodging when its employees were stranded overnight on their way back from West Texas). Any employee who complained usually went several days without receiving another job assignment. The poor condition of the vans was a subject of discussion and frustration among Graebel as well as Propack employees.

¶ 7 Propack's vans were routinely inspected and repaired by Central City, which had inspected the van in which Plaintiff was riding just days before the accident. According to Central City's inspection report, the seat belts and all other systems met federal standards. However, Plaintiff presented evidence that the seat belt was obviously broken and unusable when Central City performed the inspection.

¶ 8 The trial court granted both motions for summary judgment. The Court of Civil Appeals affirmed. Plaintiff filed a petition for certiorari seeking this Court's review, which we have previously granted. The matter is now before this Court for disposition on the legal merits.

## II. STANDARD OF REVIEW

■■■ ¶ 9 We will affirm a summary judgment only if the moving parties have established that there is no genuine issue as to any material fact and that they are entitled to judgment as a matter of law following a *de novo* review. *Wathor v. Mut. Assurance Adm'rs, Inc.*, 2004 OK 2, ¶ 4, 87 P.3d 559, 561; *Brown v. Alliance Real Estate Group*, 1999 OK 7, ¶ 7, 976 P.2d 1043, 1045. All inferences and conclusions must be drawn in favor of the party opposing summary judgment. *Wathor*, 2004 OK 2, ¶ 4, 87 P.3d at 561.

## III. DISCUSSION

### A. GRAEBEL

¶ 10 Section 11 of the Workers' Compensation Act creates the no-fault liability employers bear to their injured employees. Okla. Stat. tit. 85, § 11 (Supp.2006). In this classic "industrial bargain," *Parret v. UNICCO Service Co.*, 2005 OK 54, ¶ 20, 127 P.3d 572, 578, section 12 protects those same employers from additional liability under the common law:

> The liability prescribed in Section 11 of this title shall be exclusive and in place of all other liability of the employer and any of his employees . . . at common law or otherwise, for such injury . . . .

Okla. Stat. tit. 85, § 12 (Supp.2006). It is this protection that Graebel seeks.

■■■ ¶ 11 Plaintiff asserts that federal law has preempted section 12's exclusive remedy provision. The federal government, acting through Congress, has the power to preempt state law under article VI, clause 2, of the United States Constitution. *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 516, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992); *Choate v. Champion Home Builders Co.*, 222 F.3d 788, 791 (10th Cir.2000). Plaintiff seeks a declaration that this state's limitation on common law liability is preempted. This presents a twist on traditional preemption theory, since a finding in this situation that the state's law is preempted would not necessarily mean that a federal law would replace the state's law. Instead, it could mean that the state's

common law claim of ordinary negligence would be reinstated, a result not ordinarily contemplated in preemption analysis. With that observation, we proceed.

### 1. Preemption and the Federal Motor Vehicle Safety Act

■ ¶ 12 Plaintiff relies first on section 30103 of title 49, which contains both a preemption clause and a savings clause:

> (b) Preemption.-(1) When a motor vehicle safety standard is in effect *under this chapter*, a State or a political subdivision of a State may prescribe or continue in effect a standard applicable to the same aspect of performance of a motor vehicle or motor vehicle equipment only if the standard is identical to the standard prescribed under this chapter....
>
> \* \* \*
>
> (e) Common law liability.-Compliance with a motor vehicle safety standard prescribed *under this chapter* does not exempt a person from liability at common law.

49 U.S.C. § 30103 (emphasis added). Section 30103 is part of the Federal Motor Vehicle Safety Act (also known as the National Highway Traffic Safety Administration Authorization Act, originally codified at 15 U.S.C. §§ 1381–1431 and recodified at 49 U.S.C. §§ 30101–30170 (chapter 301 of title 49)). This Act provides for the adoption of safety standards applicable to the manufacturers and distributors of motor vehicles. 49 U.S.C. §§ 30112 & 30115. While those safety standards are applicable to vehicles used by motor carriers such as Graebel, *see* 49 U.S.C. §§ 30103(a) & 13501–13508, the enforcement mechanisms contained in the Motor Vehicle Safety Act are not directed toward motor carriers or their agents, but toward manufacturers. Therefore, these preemption and savings clauses, upon which Plaintiff has primarily relied throughout this litigation, do not apply.

¶ 13 Even if the federal law's savings clause was applicable, there has been nothing to save in Oklahoma since its enactment in 1966. At that time, the exclusive remedy provision was already well-established for hazardous employment involving "motor vehicles operating as motor carriers for the transportation of passengers or property for compensation." Okla. Stat. tit. 85, §§ 2 & 12 (1961). The Workers' Compensation Act abrogated the common law claim of ordinary negligence between covered employees and employers. *See Rogers v. Meiser,* 2003 OK 6, ¶ 18, 68 P.3d 967, 978. There was, therefore, no common law claim of ordinary negligence under these circumstances for the federal statute to save.

### 2. Preemption and the Federal Motor Carrier Act

¶ 14 Plaintiff further asserts that the federal statutes setting safety standards for commercial vehicles, 49 U.S.C. §§ 31101–31162 (part of the Federal Motor Carrier Act), also preempt the state's law. The Secretary of Transportation has prescribed regulations to "establish minimum standards for commercial motor vehicles" under the authority of section 31136. 49 C.F.R. § 393.1. Those regulations include seat belt requirements. 49 C.F.R. §§ 393.93(b), 571.208, & 571.210. Unlike the Motor Vehicle Safety Act, these statutes and regulations do, in fact, apply to Graebel. As the van's lessee, Graebel was obligated to make sure that the van complied with the safety regulations. 49 U.S.C. §§ 14102(a) & 31135.

■ ¶ 15 Our preemption analysis begins with the principles set forth by the United States Supreme Court in *Cipollone v. Liggett Group, Inc.,* 505 U.S. 504, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992); *Freightliner Corp. v. Myrick,* 514 U.S. 280, 115 S.Ct. 1483, 131 L.Ed.2d 385 (1995); and *Geier v. American Honda Motor Co.,* 529 U.S. 861, 120 S.Ct. 1913, 146 L.Ed.2d 914 (2000):[3]

---

**3.** Both *Freightliner Corp. v. Myrick,* 514 U.S. 280, 115 S.Ct. 1483, 131 L.Ed.2d 385 (1995), and *Geier v. American Honda Motor Co.,* 529 U.S. 861, 120 S.Ct. 1913, 146 L.Ed.2d 914 (2000), consider the preemptive effect of the National Traffic & Motor Vehicle Safety Act. As we stated

in part III.A.1 of this opinion, that Act is not applicable here. The preemption analysis in those cases is valuable for the legal principles and reasoning contained therein, but is not dispositive of the issues we consider today. We

Consideration of issues arising under the Supremacy Clause "start[s] with the assumption that the historic police powers of the States [are] not to be superseded by ... Federal Act unless that [is] the clear and manifest purpose of Congress." Accordingly, " '[t]he purpose of Congress is the ultimate touchstone' " of pre-emption analysis.

Congress' intent may be "explicitly stated in the statute's language or implicitly contained in its structure and purpose." In the absence of an express congressional command, state law is pre-empted if that law actually conflicts with federal law, or if federal law so thoroughly occupies a legislative field " 'as to make reasonable the inference that Congress left no room for the States to supplement it.' "

*Cipollone*, 505 U.S. at 516, 112 S.Ct. 2608 (citations omitted). Only if a court determines that a federal law does not explicitly preempt a state law will the court analyze whether it implicitly does so. *Freightliner*, 514 U.S. at 287–89, 115 S.Ct. 1483; *see generally Geier*, 529 U.S. 861, 120 S.Ct. 1913, 146 L.Ed.2d 914.

### a. Express Preemption

■ ¶ 16 The Motor Carrier Act contains an express preemption clause:

(a) **Preemption after decision.**-A State may not enforce a State law or regulation on commercial motor vehicle safety that the Secretary of Transportation decides under this section may not be enforced.

49 U.S.C. § 31141(a). The Secretary of Transportation is also directed to minimize the unnecessary preemption of state laws in prescribing new regulations. 49 U.S.C. § 31136(c)(2)(B). These appear to be the only statements about preemption in the Motor Carrier Act. As there is nothing in the record to indicate that the Secretary of Transportation has made any decision regarding any Oklahoma law or regulation pertaining to commercial motor vehicle safety, there is no express preemption.

need not discuss Plaintiff's arguments which are

### b. Implied Preemption

■ ¶ 17 The Court of Civil Appeals relied on *Cipollone* to conclude that the existence of express preemption language in the Motor Carrier Act precluded any possibility of implied preemption. We agree with Plaintiff that the Court of Civil Appeals erred in so holding. While *Cipollone* reasonably implied such a conclusion, 505 U.S. at 517, 112 S.Ct. 2608, that inference was later rejected in *Freightliner*, 514 U.S. at 287–89, 115 S.Ct. 1483. We must, therefore, consider whether the Motor Carrier Act impliedly preempts Oklahoma's law.

¶ 18 In *Freightliner*, the Supreme Court described the principles of implied preemption:

[A] federal statute implicitly overrides state law either when the scope of a statute indicates that Congress intended federal law to occupy a field exclusively, or when state law is in actual conflict with federal law. We have found implied conflict pre-emption where it is "impossible for a private party to comply with both state and federal requirements," or where state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."

*Freightliner*, 514 U.S. at 287, 115 S.Ct. 1483 (citations omitted). This form of "conflict" analysis is not split neatly in two; "impossibility" and "frustration of purpose" "shade, one into the other." *Geier*, 529 U.S. at 874, 120 S.Ct. 1913.

¶ 19 We start our analysis with the historic presumption against federal preemption of a state's police powers. *Cipollone*, 505 U.S. at 518, 112 S.Ct. 2608. Further, the express preemption clauses in the Motor Carrier Act, 49 U.S.C. §§ 31136(c)(2)(B) & 31141(a), support an additional presumption against implied preemption. *Freightliner*, 514 U.S. at 288, 115 S.Ct. 1483. This second presumption is particularly strong in light of section 31136(c)(2)(B)'s directive to avoid unnecessary preemption.

¶ 20 With those presumptions in mind, nothing in the Motor Carrier Act compels the conclusion that it preempts this state's law.

based on the assumption that it is.

The text of the preemption language strongly implies that Congress did not intend to occupy the entire field of motor carrier safety, much less workers' compensation. *Freightliner,* 514 U.S. at 287, 115 S.Ct. 1483. Although the Motor Carrier Act addresses "operator" health and safety as related to public safety, 49 U.S.C. § 31136, Plaintiff was not an "operator." [4]

¶ 21 Moreover, it is not impossible for a motor carrier/employer to comply with the state's workers' compensation laws and the Motor Carrier Act. The state's exclusive remedy provision does not require what the federal act would prohibit or vice versa. *See Geier,* 529 U.S. at 873, 120 S.Ct. 1913. The state's law presents no obstacle to Congress's purposes and objectives in enacting the Motor Carrier Act, which are, generally, to promote safety and compliance with safety laws. 49 U.S.C. §§ 31131(a) & 31136(a). We conclude, therefore, that the federal statutes do not preempt the exclusive remedy provision of Oklahoma's Workers' Compensation Act.

### 3. Federal Claim

■ ¶ 22 Plaintiff has also asserted that she has a federal cause of action, citing *Johnson v. S.O.S. Transport, Inc.,* 926 F.2d 516 (6th Cir.1991). We are not persuaded. Although the Sixth Circuit held that an injured truck driver had a federal claim under the Motor Carrier Act against the lessee of the truck, that case differs from this case in two crucial aspects. First, there was no issue of workers' compensation. *Id.* at 519. Second, the court's holding was largely based on language in the Motor Carrier Act directly addressing the driver's health and safety. *Id.* at 523–524.

4. The term "operator" does not appear to be expressly defined anywhere in title 49, but clearly refers to the licensed driver of the vehicle. *See, e.g.,* 49 U.S.C. §§ 31102(c)(1)(B) & 31150(d).

5. The following opinions discuss the nature of the private right of action created by Congress when it enacted section 14704. In some cases, courts issued multiple opinions on the issue as the case progressed. We have listed each opinion separately: *Rivas v. Rail Delivery Serv., Inc.,* 423 F.3d 1079 (9th Cir.2005); *Owner–Operator Indep. Drivers Ass'n v. New Prime, Inc.,* 398 F.3d 1067 (8th Cir.2005); *Owner Operator Indep. Drivers Ass'n v. Swift Transp. Co., Inc.,* 367 F.3d 1108 (9th Cir.2004); *Owner–Operator Indep. Drivers*

¶ 23 Further, Congress radically altered the statutory landscape after *Johnson.* In 1995, Congress abolished the Interstate Commerce Commission and created a private right of action in its place to allow individuals or companies to enforce the regulations of the Department of Transportation. 49 U.S.C. § 14704; *see also* Burton J. Mallinger et al., *The Private Right of Action under 49 U.S.C. § 14704: A New Theory of Recovery for Personal Injury Plaintiffs?,* 34–Fall Brief 32 (2004). In all of the ensuing litigation discussing the nature of that private right of action, *Johnson* has never been mentioned. Its viability, therefore, as even persuasive authority is questionable and we decline to adopt its reasoning.

¶ 24 Section 14704 creates three kinds of claims: (1) a claim to enforce an order, 49 U.S.C. § 14704(a)(1); (2) a claim for violations of tariff rates, 49 U.S.C. § 14704(b); and (3) a general claim for "[d]amages for violations":

Damages for violations.-A carrier or broker providing transportation or service subject to jurisdiction under chapter 135 is liable for damages sustained by a person as a result of an act or omission of that carrier or broker in violation of this part.

49 U.S.C. § 14704(a)(2). Taken in isolation, this third kind of claim appears to create a general right of action for anyone injured by a carrier's violation of federal motor carrier laws. That conclusion, however, is not supported by case law.

¶ 25 This Court has identified 39 published and unpublished opinions discussing section 14704.[5] Most of these opinions consider

*Ass'n v. New Prime, Inc.,* 339 F.3d 1001 (8th Cir.2003); *Owner–Operator Indep. Drivers Ass'n v. New Prime, Inc.,* 192 F.3d 778 (8th Cir.1999); *Owner–Operator Indep. Drivers Ass'n, v. C.R. England, Inc.,* No. 2:02–CV–950 TS, 508 F.Supp.2d 972 (D.Utah June 20, 2007); *Owner–Operator Indep. Drivers Ass'n v. Supervalu, Inc.,* No. 05–2809, 2007 WL 1576120 (D.Minn. May 31, 2007); *Putnam v. Olympic Transp., Inc.,* No. 06–2149, 2007 WL 1388202 (D.Minn. May 9, 2007); *Owner–Operator Indep. Drivers Ass'n v. United Van Lines, Inc.,* No. 4:06–CV–219, 2007 WL 1223463 (E.D.Mo. Apr.24, 2007); *Owner–Operator Indep. Drivers Ass'n v. United Van Lines, LLC.,* No. 4:06–CV–219, 503 F.Supp.2d 1200 (E.D.Mo.

claims for commercial damages arising under subsections (a)(1) and (b). Only three consider whether section 14704(a)(2) authorizes a claim for personal injury. In *Marrier v. New Penn Motor Express, Inc.*, 140 F. SupP.2d 326 (D.Vt.2001), the federal district court of Vermont concluded that it did. No other courts, however, have followed *Marrier's* lead. In *Stewart v. Mitchell Transport*, 241 F. SupP.2d 1216 (D.Kan.2002), and *Schramm v. Foster*, 341 F. SupP.2d 536 (D.Md.2004), the federal district courts of Kansas and Maryland rejected *Marrier* and concluded that section 14704 does not create a private right of action for personal injury. Both opinions concluded that, even though subsection (a)(2) implies a right of action for any person under any circumstances, the statute as a whole is clearly limited to commercial damages. In addition, the legislative history establishes that Congress was interested only in enabling private entities to assume the Interstate Commerce Commission's role to enforce the commercial aspects of the Motor Carrier Act. We are persuaded by the superior reasoning of the federal district courts of Maryland and Kansas and

conclude that Plaintiff has not stated a federal claim.

### 4. Intentional Tort

¶ 26 Plaintiff also asserts that her claim against Graebel falls outside of the Workers' Compensation Act because Graebel's failure to provide working seatbelts amounted to an intentional tort resulting in her injury. *Davis v. CMS Cont'l Natural Gas, Inc.*, 2001 OK 33, 23 P.3d 288; *Parret v. UNICCO Serv. Co.*, 2005 OK 54, 127 P.3d 572. Plaintiff did not argue this legal theory to the trial judge, but the statement of facts in her response to Graebel's motion for summary judgment and the evidentiary material in support of those facts clearly raised the issue. Plaintiff produced evidence that Graebel managers knew, at a minimum, that many of the seatbelts in Propack's vans were broken and that Central City's inspection report did not reflect the actual condition of the vans. The evidence supports the inference that Graebel knew that Propack retaliated against employees who complained by

Mar.13, 2007); *Fulfillment Servs., Inc. v. United Parcel Serv., Inc.*, No. CV 05–538, 2006 WL 3330783 (D.Ariz. Nov.14, 2006); *Morris v. Fla. Transformer, Inc.*, 455 F. SupP.2d 1328 (M.D.Ala. 2006); *Smiley v. Smooth Operators, Inc.*, No. 06–C–146–C, 2006 WL 1896357 (W.D.Wis. July 06, 2006); *Tillman v. Bulkmatic Transport Co.*, No. 1:05CV04671, 2006 WL 1793562 (N.D.Ill. June 27, 2006); *Owner–Operators Indep. Drivers Ass'n v. Mayflower Transit, Inc.*, Nos. 1:98–cv–0457, 1:98–cv–0458, 2006 WL 1547084 (S.D.Ind. June 01, 2006); *Fulfillment Servs., Inc. v. United Parcel Serv., Inc.*, No. CV 05–538, 2006 WL 1061892 (D.Ariz. Apr.19, 2006); *KPX, L.L.C. v. Transgroup Worldwide Logistics, Inc.*, No. CV 04–352, 2006 WL 411255 (D.Ariz. Feb. 21, 2006); *KPX, L.L.C. v. Transgroup Worldwide Logistics, Inc.*, No. CV 04–352, 2006 WL 411181 (D.Ariz., Feb. 15, 2006); *Solheim v. Earl E. Foss Trucking, Inc.*, No. DDV–04–538, 2005 WL 4708180 (D.Mont. Aug. 15, 2005); *Tayssoun Transp., Inc. v. Universal Am–Can, Ltd.*, No. Civ.A. H–04–1074, 2005 WL 1185811 (S.D.Tex. Apr.20, 2005); *Schramm v. Foster*, 341 F. SupP.2d 536 (D.Md.2004); *Owner–Operator Indep. Drivers Ass'n v. C.R. England, Inc.*, 325 F. Supp.2d 1252 (D.Utah 2004); *Owner–Operator Indep. Drivers Ass'n v. Bulkmatic Transp. Co.*, No. 03 C 7869, 2004 WL 1151555 (N.D.Ill. May 03, 2004); *Greyhound Lines v. Monroe Bus Corp.*, 309 F. SupP.2d 104 (D.D.C. 2004); *Owner–Operator Indep. Drivers Ass'n v. Arctic Express, Inc.*, 270 F. Supp.2d 990 (S.D.Ohio 2003); *Fitzpatrick v. Morgan Southern,*

*Inc.*, 261 F. SupP.2d 978 (W.D.Tenn.2003); *Owner–Operator Indep. Drivers Ass'n v. Swift Transp. Co.*, No. CV 02–1059, 2003 WL 25541714 (D.Ariz. Mar. 25, 2003); *Stewart v. Mitchell Transp.*, 241 F. Supp.2d 1216 (D.Kan.2002); *Owner–Operator Indep. Drivers Ass'n v. New Prime, Inc.*, No. 97–3408–CV–S–1, 2002 WL 33957203 (W.D.Mo. Aug.14, 2002); *Owner–Operator Indep. Drivers Ass'n v. New Prime, Inc.*, No. 6:97–CV–3408, 2002 WL 33955854 (W.D.Mo. August 02, 2002); *Owner–Operator Indep. Drivers Ass'n v. New Prime, Inc.*, 213 F.R.D. 537 (W.D.Mo.2002); *Owner–Operator Indep. Drivers Ass'n v. New Prime, Inc.*, 250 F.Supp.2d 1151 (W.D.Mo.2001); *Owner–Operator Indep. Drivers Ass'n v. Mayflower Transit, Inc.*, 161 F. Supp.2d 948 (S.D.Ind.2001); *Marrier v. New Penn Motor Express, Inc.*, 140 F.Supp.2d 326 (D.Vt.2001); *Owner–Operator Indep. Drivers Ass'n v. Ledar Transp.*, No. 00–0258–CV–W–2–ECF, 2000 WL 33711271 (W.D.Mo. Nov.03, 2000); *Owner–Operator Indep. Drivers Ass'n v. Arctic Exp., Inc.*, 87 F. Supp.2d 820 (S.D.Ohio 2000); *Turner v. Miller Transps., Inc.*, 876 So.2d 848 (La.Ct.App.2004); *Turner v. Miller Transps., Inc.*, 852 So.2d 478 (La.Ct.App.2003); *Kellander v. Davidson Bros.*, No.2000–3071, 2003 WL 25267577 (Pa. C.P. Centre County June 18, 2003). In *Griffin v. JP Transportation Co.*, No. 99–3336, 210 F.3d 371, 2000 WL 302802 (6th Cir. Mar.16, 2000), a 40th case mentioning section 14704, the appellate court refused to address the issue because the plaintiffs had failed to raise it below.

not assigning them to jobs. Before granting a motion for summary judgment, the trial court must consider and rule out all theories of liability raised by the evidentiary materials presented.[6] *Hadnot v. Shaw*, 1992 OK 21, ¶ 25, 826 P.2d 978, 987. Plaintiff's evidentiary material, combined with Graebel's contractual authority to insist that the vans be repaired, was sufficient to raise the intentional tort theory. As an appellate court, however, we will not make an initial decision on a question of disputed law or fact. *Evers v. FSF Overlake Assocs.*, 2003 OK 53, ¶ 18, 77 P.3d 581, 587. We, therefore, remand for the trial court to make a first determination on this issue.

## B. CENTRAL CITY

¶ 27 Plaintiff's claim against Central City is based in negligence. To establish a prima facie case of negligence, a plaintiff must submit evidence in support of three elements: first, that the defendant had a duty to protect the plaintiff from injury; second, that the defendant failed to properly exercise or perform that duty, and third, that the defendant's failure to properly exercise or perform that duty caused the plaintiff's injury. *Akin v. Mo. Pac. R.R.*, 1998 OK 102, ¶ 36, 977 P.2d 1040, 1054; *Hesser v. Cent. Nat'l Bank & Trust Co. of Enid*, 1998 OK 15, ¶ 12, 956 P.2d 864, 867.

¶ 28 Central City clearly had a duty to Plaintiff based in common law. One who undertakes to repair a motor vehicle owes a duty not only to the party requesting the repair but also to any person who "might reasonably be expected to be endangered by probable use of the chattel after repair." *Stuckey v. Young Exploration Co.*, 1978 OK 128, ¶ 14, 586 P.2d 726, 730; *see also Delbrel v. Doenges Bros. Ford, Inc.*, 1996 OK 36, ¶ 11, 913 P.2d 1318, 1322.

¶ 29 The nature of that duty, however, is less clear. Central City argues that its duty was only to warn of hidden or latent conditions and that, because the seat belt's condition was obvious and Plaintiff knew the seat belt was broken, it had no duty to warn her. On first examination, it appears that Central City is right, as many of this Court's opinions either imply or state outright that an inspector or repairer has a duty to warn only of a hidden dangerous condition:

> [O]ne who is paid to repair a car owes a duty of care to both the owner of the car and to the general public to assure that the repair is properly performed *or the owner is warned of its dangerous condition*, where the dangerous condition is discoverable in the exercise of ordinary care.

*Delbrel*, 1996 OK 36, ¶ 11, 913 P.2d at 1322 (emphasis added); *see also Schlender v. Andy Jansen Co.*, 1962 OK 156, 380 P.2d 523; *Greenwood v. Lyles & Buckner, Inc.*, 1958 OK 196, 329 P.2d 1063. Where the hidden nature of the defect was assumed, the Court did not always state that the duty applied only to hidden dangers, but that limitation can be implied. For example, in *Woolard v. JLG Industries, Inc.*, 210 F.3d 1158 (10th Cir.2000), the owner, manufacturer, and repair company were all theoretically liable to the injured worker when a defective sheave pin failed, causing an aerial work platform to collapse. The plaintiff's assertion was that a proper inspection would have revealed the defect. *See also Leigh v. Wadsworth*, 1961 OK 62, 361 P.2d 849. If these cases provided the only authority to be considered in this situation, Central City's duty would indeed be limited to a duty to warn.

¶ 30 However, Central City also had an independent statutory duty as an inspector under the Federal Motor Carrier Act. The Motor Carrier Act requires motor carriers to inspect the vehicles subject to their control and maintain records of the inspections and resulting repairs. 49 C.F.R. §§ 396.3, 396.17, & 396.21. Motor carriers can satisfy this requirement by having an outside inspector, such as Central City, perform the inspection. 49 C.F.R. §§ 396.17(e) & 396.19. Anyone who is required to make a record and makes a false record faces a fine of $10,000 for each violation. 49 U.S.C. § 521(b)(2)(B). Central City's duty, there-

---

6. The Court is aware, however, that *Parret v. UNICCO Service Co.*, 2005 OK 54, 127 P.3d 572, which clarified the intentional tort exception to the exclusive remedy provisions of workers' compensation, was issued only days before the trial court issued the summary judgment in favor of Graebel.

fore, was not only to warn of hidden dangerous conditions, but to truthfully report on the condition of the van.

¶31 Plaintiff has alleged that Central City knowingly completed a false inspection report stating that the van met all of the federal requirements when it did not. Graebel obtained Central City's inspection report to prove to federal officials that the vehicles under its control met the federal requirements. If its vehicles did not meet those requirements, Graebel could not use them until they were repaired. Central City's inspection report allowed Graebel to keep those vehicles on the road and continue its business. If proven, Plaintiff's allegations lead to the inference that Central City was complicit in Graebel's practice of habitually using unsafe and unreliable motor vehicles on the public roads, placing its employees and the traveling public in danger. This goes beyond a claim based on the violation of a mere duty to warn. Summary judgment on that basis was, therefore, in error.

## IV. CONCLUSION

¶32 The district court erred in granting summary judgment. Although federal law does not preempt the exclusive remedy provision of workers' compensation or provide a federal claim, Plaintiff presented sufficient evidence to raise the question of whether Graebel's actions took it outside the exclusive remedy provision of workers' compensation. Plaintiff also presented sufficient evidence to withstand summary judgment on the nature of the duty owed by Central City.

**THE COURT OF CIVIL APPEALS' OPINION IS VACATED, THE DISTRICT COURT'S JUDGMENT IS REVERSED, AND THE MATTER IS REMANDED TO THE DISTRICT COURT FOR FURTHER PROCEEDINGS**

CONCUR: EDMONDSON, V.C.J., HARGRAVE, OPALA, KAUGER, WATT, TAYLOR, COLBERT, JJ.

DISSENT: WINCHESTER, C.J.