2009 OK CIV APP 72

**In re Initiative Petition filed March 3, 2008, for cable franchise of GET REAL II, L.L.C.,**

**Greg Deffner; Get Real II, L.L.C., an Oklahoma limited liability company; Ron Miller, Peggy Massey and Patricia Pepper, Proponents/Appellants,**

**v.**

**Debra Paige, City Clerk, City of Blackwell, Oklahoma; Mark Cordell, Mayor of the City of Blackwell; and City of Blackwell, a political subdivision of the State of Oklahoma, Respondents/Appellees.**

**No. 106,546.**

Court of Civil Appeals of Oklahoma, Division No. 3.

Aug. 27, 2009.

James B. Buxton, Oklahoma City, OK, for Appellants.

Mary Ann Karns, Edmond, OK, for Appellees.

LARRY JOPLIN, Judge.

¶ 1 Proponents/Appellants Greg Deffner, Get Real II, L.L.C., an Oklahoma limited liability company, Ron Miller, Peggy Massey and Patricia Pepper (collectively, Proponents) seek review of the trial court's order dismissing their objection to denial of their Initiative Petition by Respondents/Appellees City of Blackwell, a political subdivision of the State of Oklahoma, Debra Paige, City Clerk, and Mark Cordell, Mayor (collectively, City). In this accelerated review proceeding, Proponents assert the trial court erred as a matter of both fact and law in dismissing their objection.

¶ 2 On December 11, 2007, Proponent Greg Deffner filed with City's Clerk an Initiative Petition calling for an election to grant a cable television franchise to Get Real, L.L.C. Deffner circulated the petition, obtained signatures of qualified voters, and on March 3, 2008, filed the signature pages supporting the petition.

¶ 3 By letter dated March 17, 2008, City's Clerk advised the Mayor that "[t]here are a sufficient number of signatures as required by law," but that "[t]he petition is insufficient on legal grounds" because:

    1. It does not contain the full text of the measure.

    2. The pamphlet filed prior to circulation and the pamphlet filed after circulation are not identical.

    3. The subject is not reserved to the voters.

On that same date, the City council found no valid initiative petition filed for submission to a vote.

¶ 4 Proponents then commenced the instant action, objecting to City's rejection of their Initiative Petition. Proponents alleged that they prepared their Initiative Petition "using the 1998 Initiative Petition … approved by the City as legally sufficient," that the 1998 Initiative Petition had been submitted and approved by voters, and that the proposed ordinance was "substantially identical" to the cable franchise ordinance in effect. Proponents also alleged that the City Clerk advised Proponents, shortly after the December filing, that the City Attorney had judged their Initiative Petition legally sufficient and suitable to circulate for signatures, and that the Initiative Petitions filed in December

2007 and March 2008 were identical, except for the addition of the signature pages and different verification dates.

¶ 5 Proponents consequently argued that City's charter did not require the full text of a proposed measure to be included in an initiative petition, and that their Initiative Petition substantially complied with all relevant requirements. Proponents also argued that any question concerning use of public rights-of-way was properly submitted to the voters, and not preempted by federal law.

¶ 6 City responded, arguing the ordinance as proposed by the Initiative Petition did not repeal the existing ordinance as required by City's charter, and that the Initiative Petition filed prior to circulation for signatures differed from the Petition filed after. City also asserted that the proposed ordinance sought to regulate the City's municipal trust authority, a separate legal entity, over which City exercised no regulatory power. City further argued that federal law controlled, and proscribed submission of the issue to voters.

¶ 7 Upon consideration of the parties' submissions and oral argument, the trial court held:

1. Under Section 541 of 47 U.S.C., the Franchising Authority is the City of Blackwell.

2. The Federal Courts have determined that the [Communications Act of 1934 as amended by the Cable Communications Policy Act of 1984, the Cable Television Consumer Protection and Competition Act of 1992, and the Telecommunications Act of 1996] pre-empts Oklahoma law specifically with regard to voter approval. *Cox Communications Central II, Inc. v. City of Broken Arrow*, No. 02–CV–741P(J), Northern District of Oklahoma.

3. The Court is bound to follow the Federal Court's determination.

IT IS THEREFORE THE ORDER, JUDGMENT AND DECREE OF THE COURT that the objection filed herein be, and it hereby is, dismissed.

Proponents appeal and the matter stands submitted on the trial court record.[1]

### I. STANDARD OF REVIEW

¶ 8 "A petition can generally be dismissed only for lack of any cognizable legal theory or for insufficient facts under a cognizable legal theory." *Miller v. Miller*, 1998 OK 24, ¶ 15, 956 P.2d 887, 894. "Summary judgment is warranted only when 'there is no substantial controversy as to the material facts and ... one of the parties is entitled to judgment as a matter of law[.]'" *Wylie v. Chesser*, 2007 OK 81, ¶ 3, 173 P.3d 64, 66. (Citations omitted.) We review orders granting a motion to dismiss or a motion for summary judgment *de novo*, and engage in a plenary, independent and non-deferential re-examination of the trial court's ruling. *See, e.g., Tucker v. Special Energy Corp.*, 2008 OK 57, 187 P.3d 730; *Gens v. Casady School*, 2008 OK 5, 177 P.3d 565.

### II. PREEMPTION OF STATE LAW

¶ 9 Pursuant to the supremacy clause of art. VI, U.S. Const., the United States' Congress has the power to preempt state and local law. U.S. Const. art. VI, cl. 2 [2]; *Craft v. Graebel–Oklahoma Movers, Inc.*, 2007 OK 79, ¶ 11, 178 P.3d 170, 173–174. (Citations omitted.) Congress' intent to preempt state or local law may be "explicitly stated in the statute's language or implicitly contained in its structure and purpose." *Craft*, 2007 OK 79, ¶ 15, 178 P.3d at 174. "In the absence of an express congressional command, state law is pre-empted if that law actually conflicts with federal law, or if federal law so thoroughly occupies a legislative field 'as to make reasonable the inference that Congress left no room for the States to supplement it.'" *Id.* (Citations omitted.)

¶ 10 The question of federal preemption of state law generally presents a question of federal law. *Allis–Chalmers Corp. v.*

---

1. See, Rules 4(m), 13(h), Rules for District Courts, 12 O.S.2001, Ch. 2, App.; Ok.S.Ct.R. 1.36, 12 O.S.2001, Ch. 15, App.

2. "... the Laws of the United States ... shall be the supreme Law of the Land ... any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."

*Lueck,* 471 U.S. 202, 214, 105 S.Ct. 1904, 1912, 85 L.Ed.2d 206 (U.S.Wis.) 1985. Consequently, "by virtue of the Supremacy Clause, we are bound by the decisions of the United States Supreme Court with respect to the federal Constitution and federal law, and we must pronounce rules of law that conform to extant Supreme Court jurisprudence." *Akin v. Missouri Pacific R. Co.,* 1998 OK 102, ¶ 30, 977 P.2d 1040, 1052. (Footnotes omitted.)

¶ 11 However, "nothing in the concept of supremacy or in any other principle of law requires subordination of state courts to the inferior federal courts." *Akin,* 1998 OK 102, ¶ 30, 977 P.2d at 1052. (Footnotes omitted.) So, "[s]ubject to decisions of the United States Supreme Court, state courts are free to promulgate judicial decisions grounded in their own interpretation of federal law," and "pronouncements on a federal-law question by an inferior federal court are not binding on us." *Id.* Nevertheless, we view such pronouncements on a federal-law question by an inferior federal court as "highly persuasive," and ordinarily, as a matter of both comity and the uniform application of law in the state and federal courts of Oklahoma, "we follow Tenth Circuit jurisprudence on substantive federal law." *Id.*[3]

### III.   FEDERAL REGULATION

¶ 12 "Congress, in the Communications Act of 1934, created a 'unified and comprehensive regulatory system for the [broadcasting] industry.' " *Southwestern Bell Wireless Inc. v. Johnson County Bd. of County Com'rs,* 199 F.3d 1185, 1190 (10th Cir.(Kan.) 1999). In the Cable Communications Policy Act of 1984, Congress added provisions governing cable operators and established " 'guidelines for the exercise of Federal, State, and local authority with respect to the regulation of cable systems.' 47 U.S.C. § 521(3)." *Qwest Broadband Services, Inc., v. City of Boulder,* 151 F.SupP.2d 1236, 1241 (D.C.Colo.2001). Through the Cable Television Consumer Protection and Competition Act of 1992, and the Telecommunications Act of 1996, Congress additionally subjected the cable industry to rate regulation, prohibited municipalities from awarding exclusive franchises to cable operators, and sought to encourage competition among cable providers. *Id.*

¶ 13 The parties cite, and we find, no precedential pronouncement concerning the sweep of the federal acts governing cable television providers by the United States Supreme Court. In 2001, however, a federal District Court in Colorado held that the statutory scheme of the federal communication acts, codified at 47 U.S.C. §§ 151 et seq., irreconcilably conflicted with a city's charter provision proscribing the grant of any franchise "except upon the vote of the qualified taxpaying electors," that the federal laws preempted state law, and that the federal laws prescribed submission of the cable franchise issue to the voters. *Qwest Broadband Services, Inc.,* 151 F.SupP.2d at 1242.

¶ 14 In 2002, the Oklahoma Attorney General opined that, to the extent the election approval requirement contained in the Oklahoma Constitution, art. XVIII, § 5(a),[4]

---

**3.** As the Oklahoma Supreme Court there explained:

The voluntary deference we pay to our circuit's pronouncements prevents federal law from being dichotomized within the State of Oklahoma into different bodies of legal norms-that applied in Oklahoma courts and that which governs federal courts sitting within this state. Our commitment to comity is founded on sound reasoning and we will not depart from it absent compelling reason. Such a reason exists where the Tenth Circuit interprets a Supreme Court decision in a way which we are convinced is erroneous and where to follow it would be to perpetuate error. Our independent obligation correctly to interpret Supreme Court decisions is of greater importance than the object, desirable as it is, of achieving harmony between state and federal courts within our state.

*Akin,* 1998 OK 102, ¶ 30, 977 P.2d at 1052. (Footnotes omitted.)

**4.** "No municipal corporation shall ever grant, extend, or renew a franchise, without the approval of a majority of the qualified electors residing within its corporate limits, who shall vote thereon at a general or special election; and the legislative body of any such corporation may submit any such matter for approval or disapproval to such electors at any general municipal election, or call a special election for such purpose at any time upon thirty days' notice; and no franchise shall be granted, extended, or renewed for a longer term than twenty-five years."

granted "the electorate the unfettered discretion to deny a renewal of a franchise," the election approval requirement conflicted with the federal laws regulating cable television providers, that the federal law preempted state law, and particularly, that federal law proscribed submission of the renewal application of a cable franchise holder to the voters. Okl. A.G. Opin. No. 02–21 (May 13, 2002). In 2003, the federal District Court for the Northern District of Oklahoma held that the election approval requirement of the Oklahoma Constitution, art. XVIII, § 5(a), irreconcilably conflicted with the federal acts governing cable providers, that the federal laws preempted state law, and that the federal laws proscribed submission of the cable operator's franchise renewal application to a vote of the local electorate. *Cox Communications Central II, Inc. v. City of Broken Arrow, Oklahoma,* No. 02–CV–74L–P(J) (N.D.Okl. March 11, 2003).

¶ 15 The federal acts specifically preempt any inconsistent provisions of state law. 47 U.S.C. § 556(c). The federal acts establish a comprehensive scheme of regulation, including substantive and procedural provisions for the grant, denial and renewal of a cable "franchise" to a "cable operator" by a "franchising authority." 47 U.S.C. §§ 521, 541, 546. The federal acts specify the permissible reasons for the denial of a cable "franchise" or renewal, and grant the right to judicial review of cable franchise decisions in state or federal court. 47 U.S.C. §§ 546, 555, 555a.

¶ 16 Against this broad regulatory scheme is the election approval provision of the Oklahoma constitution, art. XVIII, § 5(a), which proscribes the grant or renewal of any "franchise without the approval of a majority of the qualified electors." The term, "franchise," is not defined in § 5(a), but it cannot be seriously disputed that the term has the same meaning for purposes of both state and federal law.

¶ 17 That said, the conflict between the federal acts and Oklahoma election approval provision is patent. While the federal acts proscribe the denial of a cable franchise except for specified reasons, the voters have no such constraints in an election, and may grant or withhold their consent for a cable franchise for no reason at all. *Qwest Broadband Services, Inc.,* 151 F.SupP.2d at 1242. Voters are not a "franchising authority" contemplated by the federal acts as empowered to grant or deny a cable franchise, and the grant or denial of a cable franchise at an election is not subject to judicial review. *Id.*

¶ 18 Further, the proponents and City have negotiated no franchise agreement and City may not abdicate its franchising authority to the voters. *Qwest Broadband Services, Inc.,* 151 F.SupP.2d at 1242. Any election for use of the public ways for the provision of cable services puts the "cart before the horse" of a valid, negotiated franchise agreement between proponents and City.

¶ 19 In sum, we hold the Oklahoma election approval provision irreconcilably conflicts "with virtually every provision" of the federal acts. *Qwest Broadband Services, Inc.,* 151 F.SupP.2d at 1242. Congress's preemption of the field of cable regulation is clear, and the federal acts proscribe submission of the proponents' initiative petition to the voters.

¶ 20 The order of the trial court is AFFIRMED.

HANSEN, P.J., and MITCHELL, C.J., concur.