FILED
United States Court of Appeals
Tenth Circuit

July 10, 2014

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

GREG HORTON,

Plaintiff - Appellant,

v.

HOLLY CORPORATION; HOLLY
REFINING & MARKETING-TULSA,
L.L.C.; BROCK SERVICES, LTD.,

Defendants - Appellees.

No. 13-5057
(D.C. No. 4:10-CV-00524-GKF-FHM)
(N.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **LUCERO**, **MURPHY**, and **BACHARACH**, Circuit Judges.

Greg Horton appeals the district court's grant of summary judgment to Holly

Corporation ("Holly") on Horton's intentional tort claim arising from a workplace

injury.  Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

**I**

Horton worked as a coker process operator and cutter at an oil refinery owned

by Holly.  As part of his job, Horton removed and lowered the heads on coke drums,

---

[*] This order and judgment is not binding precedent, except under the doctrines
of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for
its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

large cylindrical vessels that hold the coke to be extracted.  In order to lower the head of a coke drum, employees had to engage a hydraulic jack located on a "trolley," a mobile platform.  After engaging the jack, employees would then move the trolley out of the way and extract coke by delivering high pressure water into the drum.

The coking process can be perilous.  Removing the coke requires dangerously hot water and steam that can escape unpredictably.  In 2002, in response to several accidents, the Occupational Safety and Health Administration ("OSHA") and the Environmental Protection Agency ("EPA") issued a bulletin outlining the dangers associated with the coking process.  The bulletin specifically addressed the removal of coke drum heads, noting that the process can create "hot spots" that remain inside the drum and emit a geyser of hot steam, water, or hydrocarbon once the head is removed.  The bulletin recommended that cokers always assume hot spots are present.  It also recommended that individuals performing the de-heading process "stay[] in a protected area" and be prepared to immediately evacuate the structure and put out any fires from a safe location.  OSHA released another alert shortly thereafter that again warned of the dangers of hot water, steam, and coke during the de-heading process.  In addition to repeating the recommendations mentioned in the earlier bulletin, the alert recommended equipment upgrades "such as installing protective shrouds" and automating the de-heading process "to keep workers away from . . . unprotected areas."

Sunoco, the petroleum manufacturer that owned the refinery in 2005, installed controls for lowering the coke drum heads from a safer location, an area termed the "doghouse" that was behind a wall near the trolley. The company locked the original controls on the trolley and marked them out of service so they could not be used. Sunoco also made corresponding changes to its operating procedure by instructing employees to exit the trolley before lowering a drum head, so that they were out of the way of a potential release of hot materials. However, the controls installed in the doghouse frequently broke and before long the old controls on the trolley were unlocked. Employees again began using the controls on the trolley and went back to standing on the trolley to engage the switch to lower the head.

By 2010, Holly had bought the refinery and taken over its operations. The doghouse controls still did not work and the de-heading switch remained on the trolley. Some employees stood on a platform next to the trolley and reached onto the trolley to engage the de-heading switch, ostensibly to reduce the risk of harm. But others stood directly on the trolley while engaging the switch. When doing so, employees were approximately eight feet from the bottom of the coke drum and in the line of fire if the drum emitted hot materials.

When Horton arrived to work on January 14, 2010, co-workers informed him that the coke drum had been acting oddly, showing pressure and temperature spikes. One employee notified a manager and told other employees, including Horton, to be careful. Nevertheless, Horton began the de-heading process. He usually stood on the

platform to engage the de-heading switch. But when he arrived at the trolley, Horton found a new switch had been installed in a slightly different location. He had not yet been trained on how to use the new switch. Because the new switch had two knobs instead of one, and because it was in a slightly different location, Horton could not reach it from the platform. He therefore engaged the switch from the trolley. Within seconds of doing so, Horton was hit by scalding hot water from the coke drum above him. His injuries were catastrophic. Horton was treated for burn wounds to approximately half of his body and was hospitalized for several months.

Horton filed this diversity action against Holly in federal court, claiming that the company willfully injured him. Following discovery, Holly moved for summary judgment, arguing that Horton was unable to establish under Oklahoma law that the company intentionally injured him. The district court granted Holly's motion, noting that there was no evidence that Holly "intended the act that caused the injury with knowledge that the injury was substantially certain to follow." Horton appeals.

**II**

We review the district court's grant of summary judgment de novo. Tademy v. Union Pac. Corp., 614 F.3d 1132, 1138 (10th Cir. 2008). A party is entitled to summary judgment if it demonstrates that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine issue of material fact exists when, viewing the record and making reasonable inferences in the light most favorable to the non-moving party, a reasonable jury

could return a verdict for the non-moving party. Bones v. Honeywell Int'l, Inc., 366 F.3d 869, 875 (10th Cir. 2004). We apply Oklahoma law to this diversity action.

Oklahoma law requires employers to compensate employees for injuries arising out of the course of their employment, regardless of fault. Okla. Stat. tit. 85, §§ 11-12 (2001). Such liability is exclusive and replaces all other employer liability related to the injury. § 12. However, an employee may retain a common law cause of action against his employer if the employer intentionally injures the employee. Parret v. UNICCO Serv. Co., 127 P.3d 572, 574-75 (Okla. 2005).

In Parret, the Oklahoma Supreme Court held that for an employer's conduct to be intentional—and thereby remove the worker's claim from the exclusive remedy provision noted above—the employer "must have (1) desired to bring about the worker's injury or (2) acted with the knowledge that such injury was substantially certain to result from the employer's conduct." Id. at 579. To satisfy the "substantial certainty" standard requires "more than knowledge and appreciation of the risk." Id. (quotation omitted). The employer's knowledge must go beyond foreseeable risk, high probability, or even substantial likelihood of injury. Id. "Nothing short of the employer's knowledge of the 'substantial certainty' of injury will remove the injured worker's claim from the exclusive remedy provision of the Workers' Compensation Act." Id.

Horton contends that Holly's knowledge that his injury was substantially certain to occur can be proven based on the warnings issued by the EPA and OSHA,

- 5 -

the company's operating procedure that required employees to leave the trolley before de-heading the coke drums, and the fact that employees were openly controlling the de-heading switch from the trolley despite such warnings and procedures. Holly, meanwhile, notes that no injury like Horton's had occurred in the fifty-five years of the refinery's operation, and that Horton took control of a switch that he did not yet understand how to operate after having been warned of the coke drum's odd behavior. Given the circumstances, Holly argues that it could not have known the combination of events that led to the accident were substantially certain to occur. This case thus presents a single issue: whether the record, viewed in the light most favorable to Horton, could support a reasonable finding that Holly was substantially certain Horton would be injured during the de-heading process. We must conclude that it could not.

Oklahoma courts have not precisely articulated the "substantial certainty" standard or the facts required to meet it. But some Oklahoma cases provide guidance by way of comparison.[1]  In Price v. Howard, 236 P.3d 82 (Okla. 2010), for example,

---

[1] Contrary to Horton's assertions, Jordan v. Western Farmers Electric Cooperative, 290 P.3d 9 (Okla. 2012), and Craft v. Graebel-Oklahoma Movers, Inc., 178 P.3d 170 (Okla. 2007), are not helpful to our review. Unlike this case, Jordan was decided at the motion to dismiss stage and involved the application of different legal standards. Indeed, the court's analysis hardly exceeded its statement that "if all allegations in [the plaintiff's] petition are taken as true . . . the petition plausibly demonstrates that [the defendant's] actions constituted an intentional tort." Jordan, 290 P.3d at 13. Likewise, in Craft, the court remanded the plaintiff's Parret claim to the trial court not because the plaintiff had established enough evidence to survive

(continued)

- 6 -

a plaintiff brought suit after her husband died in a plane crash on the employer's corporate plane. Id. at 85. The Oklahoma Supreme Court held that the plaintiff had not met the substantial certainty standard on summary judgment despite showing that the defendant knew the plane was too heavy, the weather was poor, the aircraft had a new propeller system, and the defendant violated restrictions on its operating limitations. Id. The court reasoned that although the defendant was aware the circumstances "substantially increased the likelihood" of complications, id. at 89 (quotation omitted), the substantial certainty standard imposes a "formidable barrier" against recovery, id. at 90. The court therefore concluded that the plaintiff had not shown that the employer "acted with the knowledge that [the crash] was substantially certain to result from the employer's conduct." Id.

Similarly, there is no record evidence before us that Holly acted with the knowledge that Horton's injuries were substantially certain to result from work on the trolley. Although the OSHA and EPA alerts are important indicators that the company knew substantial risks existed, the "violation of government safety regulations, even if wil[l]ful and knowing, does not rise to the level of an intentional tort or an actual intent to injure." Id. (footnotes omitted). Even though it had never had a de-heading injury at the refinery, Sunoco—which owned the refinery at the

---

summary judgment but because he sufficiently raised the claim and the trial court failed to rule on it. See Craft, 178 P.3d at 177-78.

time the alerts were published—nevertheless responded by installing controls in a safer location and altering its operating procedure.

That both Sunoco and Holly thereafter allowed workers to continue operating on the trolley, which they had done for decades without incident, is as suggestive of management's belief that workers were unlikely to be injured there as it is of the defendant's recklessness in allowing them to do so. But in neither formulation is it reasonable to infer the company expected an injury to result, just as the circumstances in Price did not suggest that the defendant expected the plane to crash. Furthermore, the record shows that after Holly purchased the refinery, the company brought in two outside consulting firms to do safety audits. Neither report mentioned anything about safety risks related to the de-heading procedure, further evidence that Holly did not know Horton's injuries were substantially certain to occur.

In Torres v. Cintas Corp., 672 F. Supp. 2d 1197 (N.D. Okla. 2009), the court denied summary judgment to the defendant on a Parret claim brought by the wife of an employee who was killed after he climbed onto an energized conveyer belt to clear a dryer jam and subsequently fell into the dryer. Id. at 1203, 1217. In denying summary judgment, the court noted that there was conflicting evidence about whether the company knew employees were climbing onto energized conveyer belts. Id. at 1211. The court also noted the undisputed fact that the employer was aware of prior similar accidents involving employees climbing onto energized conveyer belts at other plants. Id. The court therefore concluded that there was a "genuine issue of

material fact as to whether [the employer] knew with substantial certainty that [the decedent] could be injured by climbing on an energized conveyer belt and failed to take steps to stop this practice." Id.

We applied Oklahoma's substantial certainty test in Monge v. RG Petro-Machinery (Group) Co. Ltd., 701 F.3d 598 (10th Cir. 2012). That case involved a piece of safety equipment on an oil rig called a "crown saver" that the employer "was aware . . . was not operational." Id. at 603, 608. Concluding that the employee "may have had a meritorious claim to recover for his tragic injuries outside of workers' compensation if he were required to show that [the employer] had knowledge of foreseeable risk, high probability, or even substantial likelihood of injury," we held that "nothing short of [the employer's] knowledge of the substantial certainty of injury will do under" Oklahoma law. Id. at 608 (quotation and alteration omitted). We must reach the same conclusion in this case.

Although it had been warned years earlier about the dangers of the de-heading process, Holly had no knowledge of previous injuries at the refinery because there were none.[2] Furthermore, the record contains no evidence that the company was aware Horton did not know how to operate the new controls or that the new controls'

---

[2] The absence of prior injuries does not automatically imply that an employer lacked "substantial certainty" that an employee would be injured. We simply conclude that these facts, taken as a whole, cannot give rise to an inference of substantial certainty by Holly.

placement, combined with the coke drum's abnormal activity, created further complications for employees de-heading the coking units.

To be sure, Horton has provided evidence that Holly knew the trolley controls exposed its employees to a risk of significant injury. The company was undoubtedly aware that its employees were operating the de-heading switches on the trolley. Based on employee testimony and the safety alerts, it is also clear the company knew that operating from such a location left employees exposed to heavy risk. Horton's injuries were thus foreseeable and perhaps even highly probable. But there is insufficient evidence to demonstrate that Holly knew with <u>substantial certainty</u> that such an injury would occur. As the district court correctly noted, the standard is not whether an injury was substantially certain to occur, but whether the employer knew it was substantially certain to occur. Horton has not cleared this high bar.

**III**

The judgment of the district court is **AFFIRMED**.

Entered for the Court

Carlos F. Lucero
Circuit Judge